Darrel R. BLAYLOCK, Appellant,

v.

Patrick and Teresa CLARIDA,
Respondents.

No. WD 55557.

Missouri Court of Appeals,
Western District.

Feb. 16, 1999.

Bruce A. Bailey, Warrensburg, for appellant.

Respondents acting pro se.

Before Chief Judge PATRICIA
BRECKENRIDGE, Presiding Judge
LAURA DENVIR STITH and Judge
VICTOR C. HOWARD.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Darrel R. Blaylock appeals from a judgment entered February 2, 1998, quieting title to a 10–foot strip of land in favor of Defendant–Respondents Patrick

and Teresa Clarida. Mr. Blaylock claims there was no substantial evidence to support the trial court's decision in that the evidence demonstrated deed ownership through him and his predecessors in title for 17 consecutive years, the Claridas admitted their deed did not include the disputed property, and the evidence in the record established that the Claridas' title began in 1994 and there was no evidence they or their predecessors in title claimed any ownership of the disputed tract or established it by adverse possession for 10 years.

We find that the Claridas, who proceeded *pro se*,[1] did not show record ownership of the 10–foot strip of land, to wit, the north 10 feet of Lot 41, and did not plead that they adversely possessed the land or ask the court to allow them to amend their pleadings to assert adverse possession of the 10–foot strip, and therefore the court erred in finding that they adversely possessed the 10–foot strip in question. It was undisputed that no other person has record title to any of the strip. Moreover, while Mr. Clarida did assert that his own belief was that a small portion of his garage may extend onto a small portion of the 10–foot strip, he nowhere testified as to what part of the garage so extended, or what portion of the 10–foot strip it extended on, or as to how long the garage had been in existence. He also inconsistently testified that he knew the land belonged to Mr. Blaylock by deed and that the land in question did not include his garage but that of a neighbor, Mr. Tipton. Mr. Blaylock himself testified that none of the 10–foot strip as to which he sought to quiet title included any building, either that of Mr. Tipton or Mr. Blaylock. Adding to this confusion was the court's indication that it was granting the Claridas adverse possession of a different 10–foot strip than that as to which Mr. Blaylock sought to quiet title, although

the court's order referred to the 10–foot strip which was claimed by Mr. Blaylock.

Due to the confusion and inconsistencies in the record, we must remand. What is clear from the record is that the land as to which Mr. Blaylock seeks to quiet title is the north 10 feet of Lot 41, and that is the only land in issue. The only admissible evidence of the location of the land was the evidence of the survey and plat, the boundaries of which were marked by flags.[2] On remand, however, the court must clarify precisely where this evidence shows that this land is located, and whether any portion of the Claridas' garage intrudes on any portion of the strip in question. If not, then under the evidence the court must quiet title in Mr. Blaylock. If some portion of the Claridas' garage intrudes on the strip, then the court should undertake further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Blaylock and the Claridas each own residential property to the back and side of the other's property in Holden, Missouri. Mr. Blaylock's legal description describes his real estate as:

> The North Half of Lot 25; all of Lot 24; and Lot 41 EXCEPT the South 50 feet thereof; all in Mize & Coventry's Addition to the City of Holden, in Johnson County, Missouri.

The Claridas' legal description describes their real estate as:

> The South 50 feet of Lot 41, and the North 10 feet of Lot 40, in Mize & Coventry's Addition to the City of Holden, in Johnson County, Missouri.

As shown by Plaintiff's Exhibit 17, identified as a portion of a plat of survey of the area, the two properties border each other approximately as follows:

---

1. Although the Claridas proceeded *pro se* at trial, they were represented by counsel at the time they filed their answer.

2. Although Mr. Clarida attempted to describe a different 10 feet of land as the land he thought was the land Mr. Blaylock was claiming, this was clearly in error, and was based on Mr. Clarida's attempts to use a method of surveying which he admitted was not the method used by the surveyor, and he admitted he was not an expert in surveying. This evidence as to how Mr. Clarida personally thought the lot lines should be measured thus had no legal relevance.

The dispute between the parties concerns only Lot 41, for which the deeds indicate Mr. Blaylock owns the north 10 feet and the Claridas own the south 50 feet.[3] Count I of Mr. Blaylock's petition requested injunctive relief to prevent the Claridas from blocking access to Mr. Blaylock's property and placing obstructions in and across the north 10 feet of Lot 41, denying him the use of that property. In Count II, Mr. Blaylock requested the court to quiet title to this ten feet of land in him, asserting that he had record title to the land and also asserting that he or his predecessors had adversely possessed the land for 17 years.

**3.** Lot 41 is 60 feet in width [North–South] and 124 feet in length [East–West].

The Claridas' answer called for Mr. Blaylock's petition to be dismissed for failure to state a cause of action; it did not request affirmative relief or claim they had established adverse possession of the strip of land in question. Nevertheless, after a trial to the court, the judge found that the Claridas had met all the requirements for adverse possession of the 10–foot strip of land and quieted title to it in their favor.

## II.  STANDARD OF REVIEW

We will not disturb the trial court's decision in a court-tried case unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We presume the trial court's decision is correct, and the appellant has the burden of showing error. *Kerr v. Jennings,* 886 S.W.2d 117, 123 (Mo.App.1994). We view the evidence and all favorable inferences in the light most favorable to the party prevailing, *Graves v. Graves,* 967 S.W.2d 632, 635 (Mo.App.1998), and it is with this in mind that we set forth the follow relevant facts.

## III.  MR. BLAYLOCK IS THE UNDISPUTED RECORD HOLDER OF THE NORTH 10 FEET OF LOT 41

■ Mr. Blaylock established his chain of title by placing in evidence certified deeds from the Johnson County, Missouri, Recorder of Deeds Office. All of the deeds in Mr. Blaylock's chain of title use the same legal description as contained in his warranty deed. At the time of trial, Mr. Blaylock's evidence established almost seventeen years of consecutive deed ownership in him and his predecessors in title. Mr. Blaylock also placed into evidence a plat of survey based on the legal description in his deed. The survey, prepared by James Whitehead, a registered land surveyor, illustrates the boundaries of Mr. Blaylock's land in accordance with the deed and further supports his claim that the disputed 10–foot tract on Lot 41 belongs to Mr. Blaylock.

The Claridas agree that record ownership of the north 10 feet of Lot 41 is in Mr. Blaylock, pursuant to his deed, and that their deed does not give them any record claim to the north 10 feet of Lot 41, stating:

Q. But the north 10 foot of Lot 41 you don't own, do you?

A. No, I don't.

Q. Okay. And you understand that the north 10 foot of Lot 41 is what is in dispute here today?

A. Correct.

The only record on which Mr. Clarida relied to show his ownership of the land was a Johnson County tax map and testimony about it by the county assessor. It is unclear, however, how introduction of the tax map into evidence or the testimony of the county assessor assists them. The map does not show the land as belonging to the Claridas, but rather as possibly belonging to Mr. Tipton who, as noted, lives to the north of the Claridas. More specifically, the assessor testified at trial that the tax map is based on the legal descriptions of the land, which are then drawn onto an aerial photograph. The parties do not dispute that the legal description of the land shows the land as belonging to Mr. Blaylock, however. How, then, could the tax map show the land as belonging to Mr. Tipton?

The assessor explained that a tax map is not intended to be used as a survey and should not be relied on as an exact placement of any structure in relation to any lot line. He further testified that there are occasionally errors on these types of drawings, and in fact, there was previously an error on a lot adjacent in the area in dispute. He also stated that at the time the map was made up it was within the permissible range of error for the map to be inaccurate by up to 50 feet based on the scale and the size of the map. Thus, the map could not be used to show the exact ownership of the 10–foot strip at issue. Moreover, the assessor testified that the map attributed the 10 feet to Mr. Tipton only because the person preparing it could not determine who owned the strip (although the recorded deed showed it was owned by Mr. Blaylock or his predecessors), yet the map had to show it was owned by someone. Therefore, the map showed it was Mr. Tipton's only with a dotted line, and due to the

confusion even Mr. Tipton was not taxed on these 10 feet, but rather only on the 60 feet which his deed showed him to own. We fail to see how this evidence would prevent quieting title to the land in Mr. Blaylock; it certainly does not support any claim of record title in the Claridas.

The Claridas' claim of record ownership of the disputed tract also appears to be based on the fact that they and their neighbors had believed that part of the 10 feet belonged to the Claridas and part to the Claridas' neighbor to the north, Mr. Tipton. These beliefs were apparently based on their lack of knowledge that the 10 feet in question belonged to the owner of the lot behind them, and also on Mr. Clarida's personal beliefs as to how boundary lines are measured when a survey is performed. He testified that he had himself surveyed the land according to his belief as to the proper method of conducting a survey. Mr. Clarida testified that he went in to the street and, "you look both ways, and this looks like about the center of the street." From this estimate, Mr. Clarida marked off 15 feet, half the width of the street according to the legal description Mr. Clarida says he obtained from the assessor. He then measured 60 feet for his neighbor's lot. He said this measurement caused him to believe that the next 10 feet—those as to which Mr. Blaylock sought to quiet title—included a large portion of the garage of his neighbor to the north, Mr. Tipton.[4]

■ We again fail to see how this evidence assists the Claridas in defeating Mr. Blaylock's claim to record ownership of the land. First, even if we accepted Mr. Clarida's testimony, it showed the land belonged to his neighbor, not to him. It thus could not

---

4. Mr. Clarida also testified he used another customary method to determine the property boundaries by beginning his measurements from the inside edge of the sidewalk. It is unclear how Mr. Clarida could have used both methods beginning at different points and still be able to conduct an accurate survey, nor is it clear where this method put the edge of his lot.

5. The Claridas' at times seemed to concede that they have no right to the land and indicated that they are opposing Mr. Blaylock's claim mainly because they believe that if he is shown to own the north 10 feet of Lot 41, then they will be

support the trial court's holding that the land was his. Even more basically, however, Mr. Clarida admitted that he is not a registered land surveyor, and has had no formal training which would qualify him to give an expert opinion as to the legal boundaries of his land or how they are determined, and he does not know if experts use the methodology he followed. His testimony as to how a survey should be conducted or what it would show was thus not admissible and we give it no weight. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 125 (Mo. banc 1995) (expert must have peculiar knowledge, wisdom or skill regarding the subject of inquiry).

As noted above, however, evidence was presented that a legal survey had been completed, and it showed the 10–foot strip to lie in a different location than that which Mr. Clarida had measured, and according to Mr. Blaylock, the survey showed that no structure is located on the 10 feet of land in which he seeks to quiet title, i.e., the north 10 feet of Lot 41. He testified he is seeking to quiet title only to the 10 feet shown by the legal survey. Thus, if only record ownership of the land is considered, there is no obstacle to quieting title to the land in Mr. Blaylock.[5] Accordingly, if there is an obstacle to quieting title in Mr. Blaylock, it must arise from some other source.

### IV. THE CLARIDAS DID NOT REQUEST AFFIRMATIVE RELIEF AND WERE NOT ENTITLED TO A RULING GRANTING THEM ADVERSE POSSESSION OF THE LAND

■ Despite Mr. Blaylock's record title to the disputed 10–foot tract, and the admit-

---

forced to claim their record ownership to the north 10 feet of lot 40, and their neighbor to the south will then claim part of his southern neighbor's land, and so forth down the remainder of their block. This result would be unfortunate, although it is entirely speculative, and in any event, Mr. Clarida's concern that other property owners are incorrect by 10 feet as to where the northern edge of their property is located cannot provide a basis for denying Mr. Blaylock land he owns by deed, and cannot substitute for evidence of record title or adverse possession in the disputed tract of land at issue here.

ted lack of record title in the Claridas, the trial court held for the Claridas by finding that they had adversely possessed the north 10 feet of Lot 41. In so ruling, the court erred. As the trial court itself noted below, in their answer the Claridas simply asked the court to dismiss Mr. Blaylock's petition to quiet title and for injunctive relief. They did not file a counterclaim asking the court to grant them adverse possession of the land, and they reaffirmed to the court that they were not seeking affirmative relief. They did not ask the court to amend the pleadings to conform to the evidence, nor did they ask for leave to file an amended pleading seeking affirmative relief. Relief granted in a judgment is limited to that which is either sought by the pleadings or else tried by the express or implied consent of the parties. *Flowers v. Roberts*, 979 S.W.2d 465, 472 (Mo.App.1998). The trial court thus stated, on the record at the hearing, that because the Claridas had not requested any affirmative relief "I'm not going to do anything affirmative for you. That [dismissal of the petition] is the only thing you've asked me for."

■ The court then went on to address Mr. Blaylock's claim of adverse possession, as asserted by him in Count II. In order to succeed with an adverse possession claim, the claimant must show his or her possession is: (1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years prior to the commencement of the action. *Strubberg v. Roethemeyer*, 941 S.W.2d 557, 560 (Mo.App. 1997). *See also Green v. Lange*, 797 S.W.2d 765, 767 (Mo.App.1990). The burden of proving these five elements is on the party claiming title by adverse possession, and the failure to prove one necessary element prevents title being granted by adverse possession. *Strubberg*, 941 S.W.2d at 560.

The court below held that Mr. Blaylock had failed to establish these elements of adverse possession, and therefore the court would not quiet title to the land in him based on adverse possession, because "the only evidence that I've heard here really of any continuous use of the land was that by the defendants [the Claridas], that it was open and notorious by them, and/or the Tiptons, by placing this building here, the debris, the doghouse."

■ The court did not abuse its discretion in holding that Mr. Blaylock's testimony about his and his predecessors' occasional use of the land was inadequately open or continuous and notorious to support a claim of adverse possession. They had used the land only rarely, and less than the Claridas had done since they purchased the land and placed debris and a doghouse on it since 1994.

Count II of Mr. Blaylock's petition also incorporated paragraphs 1 through 4 of Count I by reference, however, and in those paragraphs Mr. Blaylock claimed that he owned the property by record title. Count II alternatively asserted that the court should quiet title in him on this basis. The court apparently did not realize that Count II claimed that the court should quiet title in Mr. Blaylock based on his record title to the land, and therefore, the court did not rule on this aspect of Mr. Blaylock's petition. To the contrary, the court seemed to treat the case as if Mr. Blaylock and the Claridas had filed competing requests to be awarded the property based on adverse possession, and the court had to find that one or the other had obtained possession of it in this manner.

Thus, after holding that Mr. Blaylock had failed to establish adverse possession, and despite its earlier recognition that the Claridas had not filed a counterclaim for adverse possession, the court went on to hold that the Claridas had established adverse possession to a 10-foot strip of land, although the court was not clear as to where this 10 feet of land was located. Specifically, the court stated:

> The evidence, as I remember it, and what I've heard from Mr. Brillhart and from the defendants regarding the shed [also called a garage] that was put on there by the Tiptons, based on the actions of the defen-

dant, I've heard enough here, whether they pled it or not, I have heard enough here to believe that they have a claim based on adverse possession, that that (sic) 10 feet in dispute—**not that what was drawn out maybe by the surveyor, but—not what everybody thought the 10 feet was, but the 10 feet that is shown up on the Plaintiff's Exhibit 17, that is what I believe they have had—they have a claim under adverse possession to.**

> As to what everybody thought the 10 feet was, that may be something that Mr. Blaylock would have a claim to. I don't know, without Mr. Tipton being brought in. I don't know why he was not brought into this.

(emphasis added).

The confusion noted by the court as to the location of the 10 feet the court was awarding to the Claridas may have resulted from the court's erroneous consideration of Mr. Clarida's non-expert testimony as to how to conduct a survey, since only that testimony supported a finding that Mr. Tipton's garage was on the 10–foot strip, and it had no evidentiary value. Adding to this confusion is the fact that the court's comments in the transcript refer to the 10–foot strip shown on Exhibit 17 as being different than that claimed by Mr. Blaylock, whereas in fact exhibit 17 shows the 10–foot strip measured by the legal survey and claimed by Mr. Blaylock. Thus, when the court, in its written judgment, later quieted title to the north 10 feet of Lot 41 in the Claridas, based on adverse possession, it is unclear whether it though this was the 10–foot strip as located by the surveyor or as located by Mr. Clarida.

■ In any event, the evidence did not support a finding that the 10–foot strip, wherever located, belonged to the Claridas by adverse possession. In support of its contrary ruling, the court cited a number of facts which the court stated met the requirements of showing that the Claridas had open-

ly, continuously and notoriously, and in a hostile manner, possessed the land to the exclusion of others. Unfortunately, the record does not support the facts on which the court based this conclusion.

More specifically, the court stated that, for a period of more than 10 years, the Claridas or their predecessors in interest had taken the north 10 feet of Lot 41 by adverse possession in that they stored or erected barricades on it, maintained it, placed a structure on it and a fence, and blocked use by others, in that the county assessor showed the property as belonging to defendants by way of a photo/tax map, and in that the Claridas had prohibited Mr. Blaylock and his predecessors from using the property, while they and their predecessors had used and possessed it continuously.

While the evidence did show that the Claridas had claimed possession to a portion of the land since they purchased it in 1994, and that sometime thereafter had placed debris and a doghouse on it, and that their tenants had built a makeshift fence on part of it once they learned of Mr. Blaylock's claims in the year or so before trial, the record contained absolutely no evidence that the Claridas or their predecessors made any use of or claim to the land prior to 1994. The only possible exception to this statement is Mr. Clarida's claim at one point that he thought a part of the corner of his garage might extend over the edge of the 10–foot strip set out by the boundary markers placed by the surveyors, because, when he stood at one of the boundary markers, he had to lean his body over to see past his garage to the other boundary marker. Mr. Blaylock disagreed, and specifically stated that the 10–foot strip he was claiming began nearly a foot north of the Claridas' garage and he was not claiming that the garage was on his land.

Even were land under the corner of the Claridas' garage at issue, however, and even did the 10–foot strip claimed by Mr. Blaylock

include a small portion of the Claridas' garage, Mr. Clarida's testimony would not entitle the Claridas to establish adverse possession to the entire 10–foot strip, even had the Claridas properly pleaded a claim for adverse possession. Rather, it could support only a finding of adverse possession by the Claridas of that small portion of the strip on which their garage stood, and only if Mr. Clarida had satisfied the other elements of adverse possession by showing exactly what portion of the land was under the garage, how long the garage had been in existence, and so forth. *Meek v. Ralston*, 918 S.W.2d 358 (Mo.App.1996) (adjacent landowners entitled only to portion of land adversely possessed, not necessarily the entire disputed area). *See also, Harris v. Lynch*, 940 S.W.2d 42 (Mo.App.1997). The Claridas did none of these things.

In any event, from the court's comments below, it appears that the court based its finding of adverse possession by the Claridas on the supposed presence of the Tipton garage on the 10–foot strip, not the presence of the Clarida garage on the strip. Indeed, the only evidence was that these garages were more than 10 feet apart, so both could not be on the 10–foot strip in question. Since the presence of Mr. Tipton's garage on the land could not support finding adverse possession in the Claridas, we can only presume that the confused nature of the presentation of evidence below misled the court into believing that Mr. Tipton was a predecessor in interest to the Claridas, rather than their neighbor to the north.

Similarly, the assessor's map cited by the court in support of its ruling did not show the land belonged to the Claridas, and in fact did not even establish it belonged to Mr. Tipton, nor did it show either garage to be on the land in question. The photographs introduced at trial also did not show either garage to overlap the land, although they did appear to border it closely.[6]

For these reasons, we hold that the trial court erred in holding that the Claridas had established adverse possession of the 10–foot strip of land. We also find the court erred in failing to rule on Mr. Blaylock's claim that

the court should quiet title to the land in his name based on his record ownership in the land and in failing to address his request for injunctive relief to prohibit the Claridas from interfering with the use of his land.

Were the record clearer as to the precise boundaries of the north 10 feet of Lot 41, we would remand with orders to quiet title to the strip in Mr. Blaylock. Due to the confusion by the court and parties below as to where this 10–foot strip is located, however, as indicated by the court's comments that the strip she was awarding title to was somehow different in location than that claimed by Mr. Blaylock, we do not believe that this would resolve the controversy, for the parties would still be in disagreement as to where the 10–foot strip began and ended, and Mr. Clarida would still be concerned that a corner of his garage extends onto the 10–foot strip, even though Mr. Blaylock says the strip he is claiming does not include any part of the garage. We therefore direct the court to determine on remand the exact location of the 10–foot strip shown by the surveyor to constitute the north 10 feet of Lot 41, and to determine whether any part of the Claridas' garage is located thereon. If not, the court should quiet title to the land, specifically described, in Mr. Blaylock. If so, in light of Mr. Blaylock's claim that the southern edge of the land as to which he seeks to quiet title lies almost a foot to the north of the Claridas' garage, the court should consider whether it would be proper to amend the description of the land as to which it will quiet title to exclude the portion of the land (if any) on which Mr. Clarida's garage is located, or to grant such other relief as may be proper and as is not inconsistent with this opinion.

Reversed and remanded.

---

6. Mr. Blaylock testified the Claridas' garage is nearly a foot from the southern edge of the strip and Mr. Tipton's garage is nearly two to three feet north of the northern edge of the strip.