**Woodrow L. GENSLER and Dana J. Gensler, Appellants,**

v.

**Ronnie CARVER and Teresa Carver, Respondents.**

**No. SD 29767.**

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 2010.

Michael Maroni and Donald Rhodes, Bloomfield, for Appellants.

Michael M. Pritchett, Poplar Bluff, for Respondents.

ROBERT S. BARNEY, Judge.

Appellants Woodrow L. Gensler ("Mr. Gensler") and Dana J. Gensler ("Mrs. Gensler") (collectively "the Genslers") appeal the judgment of the trial court which quieted title in Respondents Ronnie Carver ("Mr. Carver") and Teresa Carver (collectively "the Carvers") to a parcel of land located in Bloomfield, Missouri, and whose metes and bound description the trial court adopted from a survey performed by Lucas Surveying of East Prairie, Missouri, on February 28, 2005. The Genslers assert two points of trial court error. We affirm the judgment of the trial court as modified.

"We view the evidence and all favorable inferences in the light most favorable to the party prevailing, and it is with this in mind that we set forth the [following] relevant facts." *Blaylock v. Clarida,* 987 S.W.2d 18, 21 (Mo.App.1999) (internal citation omitted). This suit involves the resolution of the east-west property line for adjoining properties arising from the parties' use of a driveway which lies in the vicinity of their shared property line. The Carvers own a home on a parcel of land to the west of the Genslers' home and both parcels border Bloomfield Avenue to the north.

On October 18, 2006, the Genslers filed their petition in two counts wherein they sought in count one to quiet title in themselves as fee simple owners to the entirety of a parcel of land comprising some 2.85 acres that also encompassed the driveway in question, to the exclusion of the Carvers, and they sought injunctive relief against the Carvers. In their second count, they brought an action for trespass seeking damages in excess of $25,000.00 against the Carvers for their continued use of the driveway.

On November 8, 2006, the Carvers filed their answer to the Genslers' petition along with counterclaims in which they sought in their first count to quiet title in themselves by adverse possession to a parcel of land consisting of 1.56 acres of land. In their second count, the Carvers sought damages for trespass, asserting they and their predecessors in title had "for over ten (10) years . . . utilized a driveway which access[ed] their respective properties;" that they were being deprived of access to their property by way of the driveway; that the Genslers "have failed and refused and continue to fail and refuse to allow" them the "use of said driveway;" and as a result they were damaged in excess of $25,000.00.

A trial was held on August 20, 2007, and March 5, 2008. At trial, Mr. Gensler testified he believed the entirety of the driveway belonged to him and his family, even though he was aware of a survey showing otherwise at the time of his purchase. When he purchased his property, the Carvers' property was vacant and no one used the driveway for a long period of time. He related problems arose when the Carvers' tenants began blocking the driveway on occasion; driving "in [his] yard;" and

unnecessarily utilizing the circle driveway immediately in front of his home. Mr. Gensler introduced a survey by Robert Craig ("the Craig Survey") made on July 24, 2006, that showed the driveway to be totally on his property. He testified the Carvers could easily build a driveway on their own property accessing Bloomfield Avenue to their north, and Mr. Gensler wanted the trial court to rule that he and his family had title and the exclusive right to use the driveway in question.

Mrs. Gensler testified consistently with Mr. Gensler and added that the Carvers' tenants also ran over her irises. She further related her husband operated a company which owned several dump trucks and his employees had been late getting to several jobs when the driveway had been blocked by the Carvers' tenants.

Robert Craig ("Mr. Craig"), a licensed professional land surveyor, testified that he surveyed the two properties using the legal description on the parties' deeds. He stated the Carvers' deed called for them to have 128 feet bordering Bloomfield Avenue on the north, and the Genslers' deed called for them to have 218 feet bordering Bloomfield Avenue. He related that due to the Carvers' deed he concluded the Genslers had only 212.42 feet bordering Bloomfield Avenue. He stated he came to this conclusion by surveying all the adjoining properties, lining those surveys up with what was set out on the deeds, and then "not encroaching on anybody, giving the Carvers their calls, and then what was left basically is that the legal description is for the Genslers' property. It was kind of just boxed in there." Additionally, he determined "the majority of the driveway is over on the Genslers' property . . ." and he felt that only a "foot" or a "foot and a half"

of the driveway was on the Carvers' property. A copy of the Craig survey was received into evidence at trial.

On the other hand, Mr. Carver testified the properties had been surveyed by Martin Lucas, a licensed professional land surveyor ("Mr. Lucas"), that Mr. Lucas surveyed the Genslers' property on July 7, 2005, and that he surveyed the Carvers' property on February 28, 2005 ("the Lucas Surveys"). He related that Mr. Lucas set a boundary line pin "almost in the center of the driveway next to the street." Mr. Carver also stated that he had always believed it was a shared driveway, thus, he had never asked anyone permission to utilize it. He related he had always utilized the driveway when he visited his property "without any interference" and he had no other means of access to his property.[1] He testified he was requesting the trial court to set the line in the same location that Mr. Lucas had set it, which Mr. Carver stated was in the center of the driveway, as delineated by a pin set adjacent to Bloomfield Avenue to the north, such that it remained a shared driveway, and he asked that the trial court quiet title in his portion of the driveway in him.

Mr. Lucas, a licensed professional land surveyor, testified that when he surveyed the Carver property he found the eastern most boundary of their property line was located "in a black top driveway. And on [his] survey, [he] showed it as a shared driveway, not meaning that there were any easements of record on it. . . ." He related he marked this boundary with "a PK nail in the asphalt [at the northern edge adjacent to Bloomfield Avenue] which is a masonry nail that you can get into the asphalt." He related he had been contacted

---

1. Mr. Carver stated it would be difficult to construct an additional driveway on his property because certain utility poles and a tele- phone company box would have to be relocated.

by Mr. Gensler "a number of times because he was having problems with this shared driveway. And [Mr. Lucas] told him what [he] had put there ... and showed him. And there was no way the Carvers had enough room to even drive in there ..." on their side of the pin. Copies of the Lucas Surveys were received into evidence at trial.

The trial court entered its judgment on March 4, 2009, setting out that the previous owners of the Genslers' property, the Bennetts, "believed the driveway to be constructed entirely on their property and the use of the driveway by ..." the previous owners of the Carvers' property, the Ezells, "was by permission of the Bennetts." As such, the trial court rejected "any claim that the Ezells' use of the driveway was adverse to the interest of the Bennetts (or the Genslers)" and "that no prescriptive easement or right exists." It further found that "there is no feasible way for constructing a new and different entrance to and exit from the [Carvers'] property." Additionally, the trial court added that the Carvers' "use of the western most 8½ to 9 feet of the existing driveway will not significantly impair [the Genslers'] enjoyment and use of their remaining spacious driveway and property." As a result, the trial court determined the Carvers were "fee simple owners of the real estate described in [the metes and bound description set out] in Exhibit A to [the judgment]," which was based on the February 28, 2005, survey by Mr. Lucas; and determined the Genslers had no title or interest in this parcel of real estate. The trial court also found that the boundary, as established by the Lucas Surveys, was the correct boundary of the Genslers' and Carvers' properties. Additionally, it ruled the Carvers "are enjoined and restrained from using, entering upon or blocking any portion of the remaining existing driveway other than the western

most portion as previously marked by the above described nail, which the [trial court] believes to be approximately the west 8½ to 9 feet of said driveway." The trial court then denied all other prayers for relief and ruled the parties "shall bear their respective costs." This appeal by the Genslers followed.

"The appellate court will affirm the trial court's determination 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We presume the trial court's decision is correct, and the appellant has the burden of showing error." *Blaylock*, 987 S.W.2d at 21. In addition, we must give due regard to the trial court's opportunity to judge the credibility of witnesses and the trial court may "believe or disbelieve all, part, or none of the testimony of any witness." *Watson*, 298 S.W.3d at 526.

In their first point relied on, the Genslers assert the trial court erred in permitting the Carvers "to use the west [eight] and half to nine feet of the driveway because the judgment is defective as a matter of law in that it does not set forth a particular portion of the driveway that may be used exclusively by [the Genslers]."

█ "In a quiet title action or suit over a roadway, the judgment must describe with reasonable certainty the real estate affected by the judgment." *Turkey Mountain Airport, Inc. v. Estate of Faler*, 82 S.W.3d 233, 235 (Mo.App.2002).

[I]t may be stated as a general rule that, in a suit to establish or protect privileges with respect to a right of way the location and limits of which are in dis-

pute, 'the right of way involved should be definitely described in the judgment, at least so that its location, with the aid of such description, could readily be located; and the width of the way should be made clear.'

*Allen v. Smith,* 375 S.W.2d 874, 882 (Mo. App.1964) (quoting 28 C.J.S. Easements § 113b., p. 819); *see Patterson v. Harrison,* 46 S.W.3d 580, 581 (Mo.App.2001). "The judgment should be in a form so that it alone is suitable for recording in real estate records." *Creech v. Noyes,* 78 S.W.3d 223, 225 (Mo.App.2002). "A judgment that fails to adequately describe the property leaves open the possibility of future adjudication regarding the scope and location of the property affected by the judgment, and necessarily requires proof from an external source." *Id.*

█ Here, the Genslers argue the trial court's judgment is uncertain because it contains the ruling that the Carvers are entitled to use "the western most 8½ to 9 feet of the existing driveway...." While we agree that on its own this reference may be insufficient for purposes of reasonably describing the driveway at issue, in the present matter the trial court attached a legal description to its judgment which set out in metes and bounds the property it adjudged belonged to the Carvers. In its judgment, the trial court specifically stated the Carvers "are the fee simple owners of the real estate described in Exhibit A ..., made a part hereof...." In Exhibit A the trial court adopted the metes and bounds description of the February 28, 2005, survey performed by Mr. Lucas. It is clear that the metes and bounds legal description set out in Exhibit A, which was attached to the judgment, is sufficient to enable a person to establish the location of the boundary line with reasonable certainty. *See Turkey Mountain,* 82 S.W.3d at 235. Additionally, while the

judgment "enjoined and restrained" the Carvers "from using, entering upon or blocking any portion of the remaining existing driveway ..." the trial court also gratuitously added the following limitation: *"other than the western most portion as previously marked by the above described nail, which this Court believes to be approximately the west 8 ½ to 9 feet of said driveway."* (Emphasis added). It is this last italicized phrase which this Court determines is mere surplusage. It is hereby struck from the judgment as being unnecessary to the disposition of this controversy. *See Craft v. Philip Morris Companies, Inc.,* 190 S.W.3d 368, 377–78 (Mo. App.2005); *Brown v. Rollet Bros. Trucking Co.,* 291 S.W.3d 766, 777 (Mo.App. 2009) (holding that the appellate court "may strike surplusage from the findings when the remainder of the finding disposes of the controversy"). Having stricken a certain portion of the judgment as surplusage, we determine the remainder of the Genslers' Point I lacks merit and is denied.

In their second point relied on, the Genslers maintain the trial court erred in granting the Carvers the right to use the western portion of the driveway

> because by entering such a judgment the [trial court] found an easement over that portion of the driveway that was not included in the Lucas survey, and this was error because the [Carvers] did not ask for any type of easement by necessity in their pleadings, and even if the pleadings could be so construed the evidence failed to provide any sort of easement.

█ Our holding in Point I largely obviates the need to address the Carvers' second point. It is clear the trial court quieted title to the entirety of the Carvers' parcel, as described by Exhibit A attached to and made a part of the judgment. We do note that the only time the phrase

"easement" is mentioned in the judgment comes in relation to the trial court's gratuitous statement that "no prescriptive easement or right exists." This, we perceive was engendered by the somewhat confusing language found in the Carvers' counterclaim seeking damages for trespass. Again, the trial court's language relative to a finding of "no prescriptive easement or right" is mere surplusage and is stricken, because the Carvers did not specifically seek an easement over the driveway; rather they sought to quiet title to the entirety of their parcel by adverse possession. *See Maasen v. Shaw,* 133 S.W.3d 514, 521 (Mo. App.2004). Having stricken any reference to an easement we determine the remainder of the Genslers' Point II is denied.

The judgment of the trial court as modified is affirmed.

BATES, P.J., and BURRELL, J., concur.