The CITY OF ST. LOUIS, a Municipal Corporation, Appellant-Plaintiff,

v.

GOLDEN GATE CORPORATION, a Corporation, et al., Respondents-Defendants.

No. 52568.

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1967.

Thomas F. McGuire, City Counselor, Aubrey B. Hamilton, Associate City Counselor, James J. Wilson, Asst. City Counselor, St. Louis, for appellant.

Jack Greenberg, Leroy D. Clark, Gabrielle A. Kirk, New York City, for NAACP Legal Defense and Educational Fund, Inc., and the National Office for the Rights of the Indigent, Margaret McCrory, Washington, D. C., of counsel.

J. E. Sigoloff, Charles S. Sigoloff, Sidney Rubin, St. Louis, for respondents.

LAURANCE M. HYDE, Special Commissioner.

Plaintiff's petition alleged violations of its "Minimum Housing Standards Law," Ordinance 51637; and it sought to obtain compliance by appointment of a receiver, an injunction against further violations and a mandatory injunction under authority of the provisions of Ordinance 53995. The court dismissed the petition with prejudice on constitutional and other grounds raised by defendants; and plaintiff, hereinafter referred to as the City, has appealed.

The City says it acts under Art. I, Sec. 1, subsec. 29, of its charter, giving authority: "To regulate the construction and materials of all buildings and structures, and to inspect all buildings, lands and places as to their condition for health, cleanliness and safety, and, when necessary, prevent the use thereof and require any alterations or changes necessary to make them healthful, clean or safe." City says this charter provision has the effect of an enactment by the Legislature, citing Ex parte Smith, 231 Mo. 111, 132 S.W. 607, 610. This is true of a charter provision within the authorization of Art. VI, Secs. 31–33, Const., V.A. M.S. See also City of St. Louis v. Nash, Mo.Sup., 260 S.W. 985; Kalbfell v. City of St. Louis, 357 Mo. 986, 211 S.W.2d 911.

Ordinance 53995 contains the following provisions:

"Section Two. Whenever an owner shall fail to comply with an order of the Building Commissioner or of the Health Commissioner within 60 days, as herein provided, a petition may be filed by the City in the Circuit Court of the City of St. Louis, alleging one or more violations of the Revised Code of the City of St. Louis (hereinafter referred to as 'the Code') and more especially Chapters 392 and 393 thereof, in such respect, and praying for an order for the appointment of a disinterested person to act as receiver of said property, for the purpose of keeping, preserving and managing the property in question. Such remedy shall be sought only when it shall appear to the Building Commissioner or the Health Commissioner, that the safety, health or welfare of persons on, about or near said premises has been or will be endangered by the condition thereof.

"In any such case, the owner, or owners of record of said property and all other persons holding or claiming any interest, title, right or lien therein or thereon, if the same shall appear of record, shall be made parties defendant and service of process may be had upon them as provided by law.

"Any receiver appointed pursuant hereto may, at the discretion of the Circuit Court, collect all rents and profits accruing from said property, pay all costs of management, including all general and special real estate taxes or assessments thereon, and make any necessary repairs thereto. Such receiver may, with the approval of the Circuit Court, borrow money against and encumber said property as security therefor, in such amounts as may be necessary to meet the standards required by the Code."

Section Three of the ordinance further provided "a petition may be filed by the City in the Circuit Court of the City of St. Louis, alleging one or more violations of the Code in such respect, and praying for relief in the form of a decree of injunction against continued violations of the Code by the owner or owners or the person or persons in charge of said property. * * [T]he City may pray for a prohibitory injunction by which it shall seek an order against further violations of the Code, or for a mandatory injunction whereby it shall seek an order directing the defendants in said case, upon a proper showing, to comply with the provisions of the Code, or, in the alternative, if such owner shall have failed to comply timely with Section 393.-080 of the Code then for an order to raze said property so as to prevent its continued threat to the safety, health and welfare of any person or persons on, about or near said premises. Said petition may also pray for both such prohibitory and mandatory injunctions, as the nature of the case may require."

The petition in this case sought all of these remedies, including authority for a receiver "to borrow money to make necessary repairs and in so doing to place a lien on said property for the amount of said repairs." The Court sustained defendants' motions to dismiss specifying the following reasons which defendants have briefed: Plaintiff had an adequate remedy at law provided by Ordinance 51637 (condemnation, action to repair at owner's expense, fines and imprisonment); no cause of action stated and no jurisdiction because sole purpose of the City's suit is appointment of a receiver; Ordinance 53995 denies defendants due process of law, takes property for public use without just compensation and violates vested rights of defendant in its property, contrary to Art. I, Sec. 10, Constitution of Missouri, and Sec. 1, 14th Amendment to U. S. Constitution, and is not a reasonable exercise of the police power but is an unreasonable, arbitrary and capricious invasion of private rights; authorizes appointment of a receiver, as a remedy for enforcement of ordinances and not for the purpose of preserving property pending litigation and is an invalid exercise of the charter powers of the City contrary to Art. VI, Sec. 19, Constitution of Missouri, and Sec. 515.240, RSMo., V.A.M.S.; delegates legislative authority to the judiciary in violation of Art. II, Sec. 1, Constitution of Missouri; authorizes receiver to keep property without providing for revesting, depriving defendants of their property without just compensation contrary to Art. I, Sec. 26, Missouri Constitution, and Sec. 1, 14th Amendment to U. S. Constitution; purports to confer jurisdiction on a court of equity to enforce a municipal ordinance which is beyond the powers of the City; impairs the obligation of defendants' contract with holder of note and deed of trust by depriving it of rents which secured this obligation, contrary to Art. I, Sec. 13, Missouri Constitution, and Art. I, Sec. 10, U. S. Constitution; purports to confer jurisdiction on Circuit Court to enforce an ordinance contrary to Art. XII, Sec. 3, of the code of City conferring such jurisdiction on city courts.

■ Since the court decided Ordinance 53995 was invalid as being contrary to constitutional provisions, we have jurisdiction because a construction of the constitution is involved. Sec. 3, Art. V, Const. See Twiehaus v. Wright City, Mo.Sup., 412 S. W.2d 450, 451.

The City claims the constitutional provisions invoked are not applicable because Ordinance 53995 only provides authority for the City to seek equitable relief as a remedy against continued violations of its Housing Code. It says this ordinance does not attempt to confer jurisdiction on the Circuit Court but only authorizes an action based upon the right of the City to have its Housing Code enforced against continued violations by defendant for which it has no adequate remedy at law. However, the City does claim this ordinance is a valid exercise of its police power and does not deny defendant due process of law. The City also says this ordinance does not impair defendants' obligation of contract with the holder of note secured by the trust deed on the property because a receiver would hold the property for the benefit of those ultimately entitled to it. The City further says applying the rents to abate violations of the Housing Code would inure to the benefit of the deed of trust holder· because his security would be enhanced in value through repairs made. Nevertheless the City says the interest owned by the deed of trust holder is subject to a reasonable exercise of the police power to require the repairs ordered even if it does impair obligations of contract.

Although arguing these constitutional contentions, the City's main point is that Ordinance 53995 "does not purport to confer jurisdiction upon the Circuit Court nor does it purport by its passage to authorize the Circuit Court to appoint a Receiver nor does it purport in any way to circumscribe or broaden the power of·the Circuit Court to grant rights to and impose duties upon a

Receiver so appointed." It says the ordinance "merely authorized the appropriate city officials to seek equitable relief to abate conditions created by continued violation of the Housing Code." Although the City recognizes "there is no precedent in this state for the enforcing of a municipal ordinance in an equitable action," it relies on the general power of a court of equity to grant relief where legal remedies are inadequate and claims a court of equity has the authority to grant the relief it seeks. The City says its action is not solely for the appointment of a receiver but is an action to have its housing code enforced by any appropriate means. It says: "In final analysis, it is appellant's position that if the Circuit Court has jurisdiction with its equitable powers it is discretionary with that court to grant whatever equitable remedy best meets the ends of justice." It suggests prohibitory injunction or mandatory injunction as well as appointment of a receiver.

In 4 Pomeroy's Equity Jurisprudence, 5th Ed., 925, Secs. 1332–1335, it is said there are four general classes of cases in which a receiver may be appointed:

First: "Cases where there is no person entitled to the property who is at the same time competent to hold and manage it during the judicial proceeding, such as estates of infants, lunatics and decedents."

Second: Where "all of the parties are equally entitled to the possession of the property which is the subject matter of the controversy, but it is not just and proper, from the nature of the dispute and their relations with each other, that either one of them should be allowed to retain possession and control during the litigation," such as suits between partners, partition between co-owners and suits between conflicting claimants of land.

Third: "Cases in which the person holding title to the property is in a position of trust or of quasi trust and is violating his fiduciary duties" such as suits against trustees or executors, suits to enforce mortgages or equitable liens, suits by creditors and other similar suits.

Fourth: "Cases in which a receiver is appointed after judgment for the purpose of carrying the decree into effect;" such as "creditors' suits and suits to enforce other equitable liens, suits to enforce the contracts of married women against their separate estates, and suits or proceedings generally statutory for the winding up of corporations."

The parties cite our statute, Sec. 515.240, RSMo., V.A.M.S., but we cannot construe it either as enlarging or restricting the classes of cases stated in Pomeroy's Equity Jurisprudence, as being proper cases for appointment of receivers.

We agree with the City that analysis of Ordinance 53995 shows that it cannot be construed as authorizing or intending to authorize the Circuit Court to appoint a receiver in cases such as this. The only reasonable construction is that it grants authority to the City through its officers to request the relief described. Therefore, the constitutional provisions relied on by defendants are not applicable. Nevertheless, we must hold that the relief of appointment of a receiver to collect rents, borrow money, use such funds for repairs and give priority for such obligations over rights of owners and mortgagees is beyond the general power of a court of equity in the situation herein presented. Our conclusion is that authority to provide this kind of relief must be conferred by statute, as has been done in states which use such procedure; and that proper constitutional safeguards must be provided in such statutes. See 27 Am.Jur.2d 523, Equity, Sec. 6. "[A] court of equity cannot create rights; it is limited to determining what rights the parties have and whether or in what manner it is just and proper to enforce them." 27 Am.Jur.2d 522, Equity, Sec. 5. An amicus curiae brief herein cites statutes of six states as follows. "Conn. Gen.Stat.Annot. Sec. 19–347B (1965); Laws of Indiana, Chapter 243, Sec. 46–6144

[48–6144] (1967); Annot. Laws of Mass., Chapter 111, Section 127H (1965); New Jersey Laws 2A:42–80 et seq. (1966) [N.J. S.A.]; N.Y. Multiple Dwelling Law Sec. 309, 4A, McKinney's Consolidated Laws of New York, Annotated, Book 35–A; Ill. Rev.Stat. Chapter 24 Sec. 11–31–2 (1965)." These are all acts of State Legislatures, some of which including New York by recent amendment, above cited, now provide for a lien which shall have priority over all other mortgages, liens and encumbrances of record except taxes and assessments. We have been cited no court tests of the validity of such provisions.

■ The original New York Act which was upheld as constitutional in In the Matter of the Department of Buildings, 14 N.Y.2d 291, 251 N.Y.S.2d 441, 200 N.E. 2d 432, apparently was first of this kind. This act is based on the concept of "nuisance". To authorize the appointment of a receiver the Department of Buildings had to certify to the existence of a nuisance which "constitutes a *serious* fire hazard or is a *serious* threat to life, health or safety." (Emphasis ours.) It provides, if, after notice, the conditions are not remedied, and the court determines that a nuisance does exist it shall appoint the City Commissioner of Real Estate as Receiver. The receiver is authorized to collect rents and apply them to the cost of removing the nuisance, payment of operating expenses and taxes. If the rents are insufficient advancements are made from the Department of Real Estate operating fund for which the Department is given a lien. However, at the time of the above cited decision, this lien was subject to any previously recorded mortgage but the mortgagee was not entitled to any rents until the lien of the Department was paid. It was also provided that a mortgagee who removed the nuisance or reimbursed the receiver should have a lien equivalent to the lien of the receiver. This Act was held to be constitutional as a proper exercise of the police power of the state because of its relation to public health and safety. It afforded some protection of the

rights of mortgagees by only postponing the right to collect rents until the cost of removing dangerous conditions have been repaid, instead of making such cost a prior lien to the mortgage. Certainly, we cannot hold that a court of equity without any statutory authority can appoint a receiver to make alterations and repairs of property, borrow money for that purpose and authorize the establishment of priority of expenditures as a lien over previously recorded mortgages as to rents and income or otherwise. Moreover, such proposed expansion of the power and jurisdiction of the Circuit Court, a state court of general jurisdiction, would surely be considered a matter of state interest, not authorized by the grant of Charter powers for local government under the provisions of Art. VI, Secs. 31–33 Const. See McDonnell Aircraft Corp. v. City of Berkeley, Mo.Sup., 367 S. W.2d 498, 502; see also Carter Carburetor Corp. v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438. Our conclusion is that the City does not state a case authorizing appointment of a receiver for the purposes sought and that the court properly denied such relief.

As to the injunctive relief sought we note the following in the Harvard Law Review article (Vol. 78, pp. 801, 826) cited by the City: "Courts of equity have traditionally had the power to abate public nuisances at the suit of interested municipal agencies. However, there is some question whether courts have the power, absent express statutory authority, to enjoin housing code violations not declared public nuisances: a traditional doctrine, now in varying stages of disrepute, prohibits equity from enjoining commission of a crime. The equity courts observed in this study all operate under statutory authorization; the question of the power to enjoin in the absence of a statute has apparently never arisen." The City's petition herein does not proceed on the theory of public nuisance and many of the violations alleged concern only leaks in the plumbing system, although there are some which may be structural defects. As

the cited article shows a prohibitory injunction could prohibit the owner from operating his building until he had complied with the order to repair. A mandatory injunction could require the owner either to make the repairs ordered or vacate his building. Apparently vacation or prohibition of operation of the nonconforming building is not what the City wants; and we note Sec. 393.080 of Ordinance 51637 authorizes the owner to "remove or demolish such building and such action shall be deemed compliance." Furthermore, Ordinance 51637, Sec. 393.050, authorizes the Building Commissioner, if the owner failed to remedy conditions necessary to bring buildings into compliance, to do so at the owner's expense and if not paid by the owner to have special tax bills for the cost issued, which should be a lien against the property. The City fails to show why these provisions do not provide an adequate remedy and does not brief the issue of injunctive relief if it cannot have a receiver appointed.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.