**CITY OF INDEPENDENCE, Missouri, Plaintiff-Respondent,**

v.

**Mary Mildred DeWITT, d/b/a Independence Hotel, Defendant-Appellant.**

No. KCD 28017.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer Denied May 2, 1977.

Application to Transfer Denied June 14, 1977.

Rufus Burrus, W. Raleigh Gough, Independence, for defendant-appellant.

Richard G. Carlisle, Asst. City Counselor, Independence, for plaintiff-respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

The City of Independence, a constitutional charter city, obtained a permanent injunction against Mary DeWitt prohibiting DeWitt from operating a hotel in a building she owned so long as a public nuisance was maintained therein, and so long as she had not obtained State and City licenses for the operation of a hotel. She appeals.

DeWitt contends the court improperly granted the injunction because the City had an adequate remedy to correct any deficiencies in the hotel property under its ordinances. Reversed.

The City's petition, by which it sought and obtained both a temporary and permanent injunction, alleged the hotel operated by DeWitt is located in a building in which rubbish, trash and flammable material are allowed to accumulate; wiring is exposed and improperly installed electrical junctions exist; highly flammable plywood is loose on corridor walls and stair wells; sewer vents are broken allowing gas vapors in the hotel; no smoke detection devices exist; no ventilation in various rest rooms; combustible ceiling tile exists in the stair wells; the stair well going to the third floor has an opening which would create a draft to carry fire to the third floor; no fire rated doors exist in stair wells; existing fire escapes are inadequate; and the hotel premises generally are detrimental to the health of the occupants thereof and the public in general. The petition further alleged the conditions described therein constitute violations of the health standards of the City. The regulations of the Division of Health of the State and the fire prevention code and uniform fire code as adopted by the City.

It was further alleged the conditions listed constitute a violation of the building code of the City with respect to the plumbing and electrical conditions. The petition alleged the condition of DeWitt's property in violation of the various City ordinances made the hotel property a public nuisance and requested a temporary and permanent injunction prohibiting DeWitt or anyone else from occupying the premises until the alleged conditions were corrected.

The court entered a temporary injunction and then held a hearing to determine whether a permanent injunction should be issued. At this hearing the City introduced evidence to prove the allegations in its petition. The City primarily introduced evidence to show the dangerous condition of the loose plywood on the corridor walls. By various experts it was shown this condition would substantially contribute to the faster spread of any fire which might occur in the building. Various building and fire experts testified as to the dangerous condition of the plywood, coupled with the existence of the plywood on the stair wells and the location of a hole in the plywood in the stair well leading from the second to the third floor which would create a draft. This would result in a fire being rapidly drawn from the second to the third floor.

The evidence showed only the first two floors of the building were occupied by tenants, some transients, but mostly permanent. The third floor, although previously filled with debris, had been cleaned.

The City's evidence also showed the existence of exposed wiring and electrical junction boxes in which the wiring was not properly attached. The evidence also showed the absence of fire doors at the top of the stairs at each floor and the fire escapes were vertical and approximately ten feet from the ground.

The evidence also showed there was no ventilation in the rest rooms and some mattresses were soiled. Various other minor deficiencies were also shown.

The City further proved the hotel did not have either a City or State license. DeWitt offered evidence to show she had attempted to procure a City license but the City Council had refused to issue the same.

The City introduced Chapter 4 of the City Code. Section 203 of that Chapter pertains to dangerous buildings. The definition of dangerous buildings includes buildings which are unsanitary so as to work injury to the health, morals, safety or general welfare of those occupying the building; those having light, air and sanitation facilities which are inadequate to protect the health, morals or safety of those living there; those having inadequate facilities for egress in case of fire or those having insufficient stairways or fire escapes; those which because of their condition are unsafe, unsanitary or dangerous to the health, morals, safety or general welfare of the people in the City; and those existing in violation of any provisions of the building code, the fire prevention code or other ordinances of the City.

Section 203 declares all dangerous buildings to be public nuisances. That Section provides for the repair, vacation or demolition of dangerous buildings. The procedure is established in such Section by which City employees are required to make a report in writing to the building official of the City in which they describe any buildings or structures they believe to be dangerous buildings. Building inspectors are required to inspect residential, institutional, and assembly type buildings as often as necessary to determine whether any condition exits which would render them to be dangerous buildings in terms of the ordinance. The building inspector, as he finds conditions to exist which makes a structure a dangerous building, is required to notify the owner in writing that (1) the owner must repair, vacate and repair, or vacate and demolish such building; (2) vacate said building or have it repaired and remain in possession; (3) a mortgagee, agent, or other person having an interest in the building as shown by the land records of the county, may, at their own risk, repair, vacate or demolish such building. The owner and other persons interested in the building are required to be given a reasonable time, not exceeding ten days, unless the building official extends the time, to perform the work described in the notice.

In addition to the notice given to the owner, the building inspector is required to notify the building official of the City as to the existence of a dangerous building. Upon receipt of this report, the building

official must give the owner and all other persons interested in the property at least twenty-one days written notice to appear before him to show cause why the building or structure reported to be a dangerous building should not be repaired, vacated and repaired, or demolished, in accordance with the statement furnished to the parties by the building inspector. The building official is required to hold a hearing at the time set and to receive evidence offered by the building inspector and by the owner or other interested party. The official is required to make written findings of fact from the testimony received as to whether or not the building in question is a dangerous building.

The official is required to issue an order based upon the findings of fact and if a dangerous building is found to exist, to command the owner to repair, vacate and repair, or vacate and demolish such building. The ordinance further provides if the owner or other interested party fails to comply with the order issued by the building official within the time specified therein, the building official shall cause such building to be repaired, vacated and repaired, or vacated and demolished as the facts may warrant. The building official is authorized to certify the charge for the repair, vacation or demolition to the City and a special tax bill shall be issued against the property. The ordinance further provides the charge for abatement of the public nuisance shall include the actual cost of demolition plus a cost of $20.00 for administration. The tax bill is made a lien upon the property and may be enforced to the same extent and in the same manner as other special tax bills. The taxpayer is given the privilege of paying such tax bill over a period of ten years with the lien continuing for that period.

Section 203 further provides for emergency situations. The building inspector shall report to the building official when it reasonably appears there is immediate danger to the health, life or safety of any person, unless a building is immediately repaired, vacated and repaired, or vacated and demolished. After such report the building official shall cause the immediate repair, vacation or demolition of the dangerous building. The cost of such emergency repair, vacation or demolition is collected in the same manner as costs of repair, vacation or demolition carried out pursuant to notice and hearing.

The ordinance provides anyone aggrieved by any decision, finding or order issued under that Section may request a hearing before a Board of Appeals established by the building code of the City. Any interested party aggrieved by the determination of the Board of Appeals may appeal to the Circuit Court as provided in Chapter 536, RSMo 1969.

The above provisions of Section 203 comport with the authority granted by Sections 67.400 to 67.450, RSMo 1969, to constitutional charter cities.

The evidence offered by DeWitt tended to show the building, although old, had not had any fires of a general nature, nor were the safety and health deficiencies nearly as bad as portrayed by the City's evidence.

The main dispute between the parties concerned the flammable nature of the plywood on the corridors, the deficiencies of the fire escapes and the condition of the wiring. At one point, the City's evidence tended to show all of the deficiencies could be corrected with the expenditure of about $1,000.

At the conclusion of all the evidence, the court entered a permanent injunction by which DeWitt was prohibited from occupying her building in such a way as to maintain or permit a public nuisance as alleged in the petition, continuing violations of the health standards set by the City and the State, and continued violations of the fire prevention code, uniform fire code and national fire code adopted by the City, and continued violation of the City Code by operating a hotel without a license. The injunction further prohibited DeWitt from violating Section 315.260, RSMo 1969, by

operating a hotel without first obtaining the permit required by that Section, and prohibited DeWitt from operating a hotel business generally until the public nuisance as alleged and proven had been abated and until she was no longer in violation of State statutes or City ordinances. The sheriff of Jackson County or the chief of police of the City of Independence were authorized to abate the public nuisances.

It could be noted parenthetically the permanent injunction did not set out any specific conditions found to constitute a public nuisance nor did it set out any specific condition which was found to be in violation of State law or City ordinance with exception of the reference to Section 315.260. That Section refers only to tourist camps and its applicability to this case has not been commented on by any of the parties.

By her answer DeWitt raised the defense of an adequate remedy at law and alleged the City had not exhausted the administrative remedy provided in Section 203 of the ordinances. She continues such argument in this court. In this contention DeWitt is correct.

The question presented is: Can the City obtain an injunction to abate conditions existing in violation of ordinances which are declared to constitute a public nuisance, when the City has a procedure outlined in its ordinances to correct such violations? This court answers in the negative.

■ The general rule is that an injunction will not lie if there is an adequate remedy at law. *State ex rel. Phillips v. Yeaman,* 451 S.W.2d 115, 118[6] (Mo. banc 1970). This general principle has not been applied to the specific facts of this case in this State so far as the research of the parties and this court reveals. However, in *City of St. Louis v. Golden Gate Corporation,* 421 S.W.2d 4, 9 (Mo.1967) the court made reference to the situation that exists here. In that case the City sought to obtain the appointment of a receiver and an injunction against further violations of the minimum housing standards. The purpose

of the receiver was to take charge of the property, receive the rents, and to make repairs. The trial court refused the City relief and on appeal the Supreme Court noted the City had an ordinance which authorized the building commissioner, if the owner failed to remedy conditions necessary to bring buildings into compliance, to do so at the owner's expense and, if not paid by the owner, to have special tax bills for the cost issued which would be a lien against the property. The court noted the City had failed to show why those provisions would not provide an adequate remedy. The court did not predicate its decision upon the theory of an adequate remedy through the ordinances authorizing the City to make repairs. However, it is apparent the court was of the opinion the City should have alleged and proved that the ordinance authorizing the City to make repairs did not provide an adequate remedy at law.

■ The City contends it is entitled to an injunction because the alleged violations of the City ordinances made the hotel a public nuisance. The City cites general statements appearing in several cases indicating the City has the power to abate public nuisances by injunction. The City does not contend the property here involved is a public nuisance at common law, but states a public nuisance exists because of the violation of City ordinances. In that situation it is stated in McQuillin, Municipal Corporations, Vol. 6 (1969) Sec. 24.70: "Abatement of nuisances by a municipal corporation should be by the particular legal steps outlined by charter or statute." Here, the procedure for the City to abate the nuisance was spelled out by Section 203 of its building code.

The City does not contend the procedure set out in Section 203 is impractical or unworkable, and, in fact, makes no complaint about the operation of that procedure. The City simply contends it has given DeWitt numerous notices of violations which have existed over a long period of time without being corrected. In frustration, it seems, the City sees an injunction as

the best answer. The obvious answer to this contention is the City could have begun the procedure outlined in Section 203 to remedy any deficiencies in this building at any time it had evidence of the necessary facts. Further, if the City were of the opinion the conditions alleged were of immediate danger to the health, safety and welfare of the occupants of this building, it could have gone in and made immediate repairs without following the full procedure in Section 203. Of course, any questions concerning the propriety of the City's action under the emergency procedure could later be questioned. The fact remains, the City had a means to bring about either immediate repair or repair after a hearing provided its evidence showed the existence of conditions which required the repair.

The City makes some contention that Section 11.136 of its ordinances regarding nuisances in general save to it the right to proceed by way of injunction. However, this Section deals only with general nuisances which in all likelihood would refer to common law nuisances. Here the City did not allege the property was a general nuisance, but alleged it was a public nuisance by reason of specific fire and building code violations. This Section would not authorize an injunction in this case.

■ The City further contends it was entitled to an injunction under the authority of *State ex rel. Eagleton v. Cameron,* 384 S.W.2d 627 (Mo.1964) because DeWitt did not have a state license to operate the hotel. However, that case involved a nursing home and Section 198.160, RSMo 1969, specifically authorizes the Attorney General to obtain an injunction against the operation of a nursing home without a license. The failure of DeWitt to obtain a State license can only be prosecuted by the prosecuting attorney under Section 315.200, RSMo 1969. No such action has been brought.

■ The City also seeks to justify the injunction on the grounds DeWitt did not have a City license to operate a hotel. The ordinance requiring a license for the opera-

tion of a hotel provides the failure to obtain a license is a misdemeanor and punishable by a fine. It does not purport to make the failure to obtain a license a nuisance. The City likewise failed to allege or prove the remedy afforded by the license ordinance of a fine was not an adequate remedy at law.

The detailed procedure which the City adopted to correct deficiencies in buildings provided a complete and ample method by which the City could obtain correction of any deficiencies in this hotel. The City neither alleged nor proved any ground to show the remedy provided in its ordinances, adopted pursuant to State statute, was not a complete and adequate remedy at law. For that reason, under the general principle that an injunction will not lie if an adequate remedy at law is present, the issuance of a temporary and permanent injunction in this case was not within the jurisdiction of a court of equity.

■ DeWitt relied on Section 203 to show the City had an adequate remedy at law, but at the same time questioned the validity of certain uniform codes which she alleged the City had adopted by reference. This court is not ruling on the validity of any City ordinance in this case because it is not necessary to do so. This holding is limited to a determination the City may not resort to a court of equity for an injunction when it had adopted a detailed method to deal with dangerous buildings absent allegations and proof to show such procedure does not provide an adequate remedy at law.

Judgment reversed.

All concur.