**CITY OF KANSAS CITY, Missouri, Respondent,**

v.

**NEW YORK–KANSAS BUILDING ASSOCIATES, L.P., Appellant.**

**No. WD 60818.**

Missouri Court of Appeals, Western District.

Dec. 17, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2003.

Application for Transfer Denied March 4, 2003.

Jeffrey J. Simon, Kansas City, MO, for Appellant.

Theodore T. Anderson, Kansas City, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., EDWIN H. SMITH and LISA WHITE HARDWICK, JJ.

ROBERT ULRICH, Judge.

### Factual and Procedural Background

New York–Kansas Building Associates, L.P. ("NYKBA") appeals the judgment of the trial court in favor of the City of Kansas City (the "City") in its suit for a permanent mandatory injunction. NYKBA contends that the trial court erred in granting a permanent mandatory injunction to the City because: (1) the City's pleadings did not include a request for the forced sale of the Professional Building (the "Building") located at 1103 Grand Avenue, Kansas City, Missouri; (2) the City had an adequate remedy at law which it failed to pursue; (3) the court acted outside of its equitable powers when it held that the Building would be sold at a sheriff's auction if the Building was not demolished or brought into compliance with the Kansas City Code of Ordinances (the "Code"); (4) a public nuisance cannot be found on the basis of Code violations and a "dangerous building" declaration by the City; (5) the trial court's finding that the Building was a public nuisance was not supported by substantial evidence and was against the weight of the evidence because the Building does not affect the health, safety, or welfare of society; and (6) the unclean hands doctrine applies because the City was involved in manufacturing evidence submitted to the trial court.

The City filed a Petition for Injunction on September 30, 1999, seeking abatement of a public nuisance at the Building located at 1103 Grand Avenue, Kansas City, Missouri. The Building has been vacant since May 1991 when a water tank located on the roof erupted during a power outage. This eruption caused several thousand gallons of water to spread throughout the Building. The Director of Neighborhood and Community Services, a division of the City, issued an Order to Repair on September 8, 1995, directing NYKBA to vacate the Building and make certain repairs within thirty days of the vacancy. NYKBA did not comply with either directive. On July 29, 1997, the City issued an Order to Demolish the Building to NYKBA. NYKBA did not comply with the demolition order. Subsequent to that Order, the City ticketed NYKBA for violating Chapter 56 of the Code. NYKBA pleaded guilty to the violation on August 27, 1999, and thereafter paid a fine on September 29, 1999.

On March 15, 2001, the City offered to dismiss the suit without prejudice if the prior developer of the Building, someone other than NYKBA, agreed to complete a list of various repairs and other items regarding the Building. The majority of these items were completed with the prior developer spending approximately $46,000 on completion of the repairs.

A bench trial in the City's suit was conducted on October 9, 2001. The Court issued its Findings of Fact and Conclusions of Law on November 15, 2001, finding that the Building was a public nuisance, permanently enjoining NYKBA from maintaining such a nuisance, requiring NYKBA to either comply with various sections of the Code within a prescribed time period or demolish the building within thirty days of the judgment and ordering a forced sale of the Building should NYKBA fail to comply with the judgment. This appeal followed.

### Standard of Review

A judge-tried case is affirmed on appeal unless it is not supported by sub-

stantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When setting aside a judgment on the ground that it is against the weight of the evidence, appellate courts should proceed with caution. *Id.* An appellate court should set aside a decree or judgment on the ground that it is against the weight of the evidence only if it has a firm belief that the decree or judgment is wrong. *Id.* When reviewing a bench-tried case, the appellate court's primary concern is the correctness of the trial court's result, not the route taken to reach it. *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App. S.D. 1990). Regardless of whether the trial court's proffered reasons are wrong or insufficient, if the correct result was reached, the appellate court must affirm. *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App. E.D.1992).

### I. Forced Sale of Building

In its first point on appeal, NYKBA claims the trial court erred in granting the City a permanent mandatory injunction containing a provision ordering a forced sale of the Building because the City's pleadings did not contain such a request. NYKBA contends that this portion of the trial court's judgment should be stricken because the trial court acted beyond the scope of its power in authorizing a forced sale. It also claims that it was error for the trial court to adopt verbatim the City's proposed Findings of Fact and Conclusions of Law. In adopting the City's proposed order verbatim, NYKBA argues that the trial court rubber stamped the City's order without giving it much review.

The relief granted in a judgment is limited to that sought by the pleadings or else tried by the express or implied consent of the parties. *Blaylock v. Clari-*

*da*, 987 S.W.2d 18, 23 (Mo.App. W.D.1999) (citing *Flowers v. Roberts*, 979 S.W.2d 465, 472 (Mo.App. E.D.1998)). The powers of a court of equity to adjudicate are broad but limited to the claim for relief and issues made by the pleadings. *Blando v. Reid*, 886 S.W.2d 60, 67 (Mo.App. W.D.1994).

In this case, the City's pleadings did not contain a specific request for the forced sale of the Building. The City's Petition for Injunction contained the following prayer for relief:

> Wherefore, [the City] prays for the Court to issue its permanent mandatory injunction enjoining [NYKBA] from allowing these nuisances to exist and from maintaining any ·condition which is prohibited under Chapters 18, 48, 56, or 80 of the Code of Ordinances of Kansas City, Missouri and ordering [NYKBA] to correct all such buildings, nuisances, property maintenance, and zoning code violations and deficiencies as may be shown to exist on the property at the time of the hearing in this matter and for such other and further relief as the Court deems just, including the costs of this proceeding.

The City argues that the trial court is not precluded from ordering a forced sale of the Building because it included a general prayer for relief—"such other and further relief as the Court deems just" in its petition. As a general rule, the prayer for relief is not part of the petition. *Allen v. Allen*, 433 S.W.2d 580, 583 (Mo.App. W.D. 1968). This rule is particularly applicable to equitable proceedings. *Id.* Although the prayer for relief is not part of the petition, the trial court is limited when awarding relief to a party to the relief requested in the pleadings or tried by the express or implied consent of the parties. *Blaylock*, 987 S.W.2d at 23. The evidence presented indicates that the City did not

specifically request in the pleadings the forced sale of the Building.

 The second manner in which a trial court may award relief is if it is tried by the express or implied consent of the parties. *Id.* The City contends that it asked for the forced sale of the Building at trial. The record reflects that the following exchange between the Court and Ms. Steinhauser, counsel for the City, took place:

> The Court: Okay. Well, if you know, in a quest to make this much simpler then, if you have a non assailable order to demolish then aren't you here simply asking for the relief to have the order to demolish carried out?
>
> Ms. Steinhauser: Not exactly because we are stating that there are some things wrong with the property outside of the demolition, the aesthetics. It is not pretty.
>
> \* \* \* \* \* \*
>
> What we are asking the Court to do is to step up above what the ordinance can do, which is just order it; and then we can demolish it if we have the money. We are asking the Court to order that they—a mandatory injunction that they abate the nuisance on the property; and if they don't do that this Court has the ability to order the sale of the property.

The City argues that NYKBA's failure to object to this discussion constituted its implied consent to the forced sale remedy.

 Missouri Supreme Court Rule 55.33(b) allows amendments to the pleadings that conform to the evidence. "When issues not raised by pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). The implied consent rule, however, applies only when the presented evidence applies solely to a new issue and is not relevant to issues already present in

the case. *Shoemaker v. Houchen,* 994 S.W.2d 40, 46 (Mo.App. W.D.1999). In effect, the implied consent rule provides that if evidence applying to a new issue is admitted, without a timely and specific objection, and the evidence is not relevant to issues already present, Rule 55.33(b) treats the new issue as having been raised in the pleadings. *Id.*

In the case at bar, when the issue of a forced sale of the Building was raised through statements by the City's counsel, NYKBA did not expressly object. The City contends that NYKBA impliedly consented to the forced sale by not objecting to it at the trial. NYKBA was not required to object to the forced sale issue because the City did not raise a new issue. The City's statements cannot be construed as a request for the court to order a forced sale of the Building. The record reflects that counsel for the City simply stated that the Court had the power to force a sale. Counsel for the City did not, moreover, present any evidence at trial on the forced sale of the Building.

In the absence of a specific request in its pleadings regarding the forced sale of the Building or the express or implied consent of NYKBA at trial, the trial court erred in awarding such relief. If the City wanted to request the forced sale of the Building, it could have asked for it in its pleadings. Allowing the City to request the forced sale of the Building without amending the pleadings effectively denied NYKBA an opportunity to properly defend against the claim.

 NYKBA also contends that the trial court erred in adopting verbatim the City's proposed Findings of Fact and Conclusions of Law. This aspect of NYKBA's point one is not addressed as it does not comply with the requirements of Rule 84.04. This portion of NYKBA's argument

was not properly included in the Point Relied On as required by Rule 84.04(d)(1)(A), which provides:

Where an appellate court reviews the decision of a trial court, each point shall: (A) *identify the trial court ruling or action that the appellant challenges;* (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

(emphasis added). The purpose of the requirement is to provide notice to the other party of the exact issues that must be contended with and to apprise the court of the issues to be presented on appeal. *C.C.J.K. ex rel. Kercher v. Jackson,* 11 S.W.3d 110, 112 (Mo.App. W.D.2000). Compliance with Rule 84.04 is mandatory. *Wilson v. Carnahan,* 25 S.W.3d 664, 667 (Mo.App. W.D.2000). Mandating compliance with Rule 84.04 ensures that appellate courts do not become advocates by speculating on facts and arguments that have not been asserted. *See id.* Failure to comply with the requirements of Rule 84.04 is grounds for dismissal. *Stickley v. Auto Credit, Inc.,* 53 S.W.3d 560, 562 (Mo. App. W.D.2001). "It is not the function of the appellate court to serve as advocate for any party to an appeal." *Wilson,* 25 S.W.3d at 667. NYKBA did not properly submit the argument regarding the trial court's verbatim adoption of the City's proposed Findings of Fact and Conclusions of Law within the Point Relied On. This failure is fatal and as such results in that portion of the argument not being addressed.

## II. Injunction/Adequate Remaining Remedy at Law

 In its second point on appeal, NYKBA claims that the trial court erred in granting a permanent mandatory injunction to the City because the City had an adequate remedy at law that it failed to pursue. NYKBA contends that the Dangerous Buildings or Structures provision of the City's Code permits the City to either abate the dangerous condition or demolish the Building and assess the cost to the owner. NYKBA also argues that the City's failure to pursue either remedy results in the City failing to exhaust all of its administrative remedies before pursuing legal action. NYKBA's final argument on this point is that the City lacked justification for not demolishing the Building because it had enough funds in the budget to cover the demolition cost.

 To obtain injunctive relief, a party must prove: (1) that the party has no adequate remedy at law; and (2) that irreparable harm will result if the injunction is not granted. *Walker v. Hanke,* 992 S.W.2d 925, 933 (Mo.App. W.D.1999). An injunction is an extraordinary and harsh remedy and should not be granted when there is an adequate remedy at law. *Id.* Generally, the phrase "adequate remedy at law" means that damages will not adequately compensate the plaintiff for the injury or threatened injury. *Glenn v. City of Grant City,* 69 S.W.3d 126, 130 (Mo. App. W.D.2002). Irreparable harm can be found when pecuniary remedies fail to provide adequate reimbursement for improper behavior. *Id.*

 In this case, the City failed to establish that it did not have an adequate remedy at law. "[A] City may not resort to a court of equity for an injunction when it had adopted a detailed method to deal with dangerous buildings absent allegations and proof to show such procedure does not provide an adequate remedy at law." *City of Independence v. DeWitt,* 550 S.W.2d 840, 845 (Mo.App. W.D.1977). Under Chapter 56 of the Code, the City has

several remedies for correcting dangerous buildings including prosecuting the building owner, abating the dangerous conditions, demolishing the building or ordering that the dangerous conditions be abated or that the building be demolished. The evidence presented shows that the City served NYKBA with an Order to Repair and an Order to Demolish. The City then prosecuted NYKBA when it failed to comply with the Order to Demolish. NYKBA pled guilty to the charge and was fined $500. A day later the City filed this action against NYKBA.

Although the City pursued some of the administrative remedies available to it, it failed to pursue all of the administrative remedies available under the Code. Specifically, sections 56–385, 56–533, 56–540, and 56–546 all provide remedies that the City could have pursued against NYKBA. Section 56–385(a)–(c) authorizes penalties of $50 to $500 and/or 180 days in jail should the building owner violate any of the property maintenance provisions. In addition, this section allows for multiple fines to be assessed against the building owner. In this case, NYKBA was only assessed a fine on one occasion. Section 56–533 allows the City to order a dangerous building repaired or demolished. Section 56–540(a) permits the City to abate any dangerous conditions "where it reasonably appears there is an immediate danger to health, life, safety or welfare of any person because of a dangerous condition." Subsection (d) of section 56–540 authorizes the City to assess the cost of abatement to the building owner. Had the City believed that the conditions of the buildings were of immediate danger to the health, life, safety or welfare of the public it could have gone into the Building and made repairs. Under section 56–546(a)–(d), the City can order the building to be demolished and recoup the cost of demolition from the building owner. Not only did the City fail to pursue the various remedies available under Chapter 56—Property Maintenance, it also failed to pursue the remedies available to it under Chapter 18—Building and Building Regulation, Chapter 48—Nuisance, and Chapter 80—Zoning of the Code. For the City to suggest that the Code's comprehensive remedy scheme did not provide it with an adequate remedy at law when it failed to utilize the statutory scheme to its full extent is an unreasonable argument. That the City had an adequate remedy at law is evidenced by the fact that the City had a process for bringing about the immediate repair or demolition of the Building. The City's decision to not utilize the statutory scheme is not an adequate basis for granting an injunction.

NYKBA's final contention is that the trial court erred in awarding the City a permanent mandatory injunction because the City had sufficient funds in its budget for demolishing the Building. The City claims that it does not have enough funds in its budget to demolish the Building as its budget is being reduced. The record reflects that the City has not specifically set aside funds to demolish the Building. In the event that the City could somehow appropriate enough funds to demolish the Building, the City argues that it is unlikely to recoup the demolition cost from NYKBA, which has $40,000. The evidence presented at trial indicated that demolishing the Building would cost approximately $500,000. Although the City does not have enough funds to demolish the Building, it could pursue other remedies under the Code. "[W]here a municipality has an adequate remedy at law to deal with dangerous buildings," " then the equitable remedy of injunction—there sought—does not lie." *City of Independence v. Richards*, 659 S.W.2d 795, 797 (Mo.App. W.D.1983) (citing *City of Independence v. Dewitt*, 550 S.W.2d 840, 845

(Mo.App. W.D.1977)). The Code does not currently contain a provision allowing the City to bypass the administrative remedy process and immediately seek an injunction. Authority to provide this type of relief must be provided by statute. *City of St. Louis v. Golden Gate Corp.*, 421 S.W.2d 4, 7 (Mo.1967). In the absence of such a provision in the Code, the City is limited to following the procedures for abating or demolishing the dangerous building as delineated in the Code before pursuing injunctive relief.

■ NYKBA also argues that the City improperly cites *Wrenn v. City of Kansas City*, 908 S.W.2d 747 (Mo.App. W.D.1995) for the proposition that the defendant in a public nuisance action may not challenge the underlying facts of an Order to Demolish when the time for appealing such order has expired. As this point was not properly included in the Point Relied On as required by Rule 84.04(d), this point will not be addressed.

### III. Injunction/Unconstitutional and Without Evidentiary Support

In point three of its appeal, NYKBA claims that the trial court erred in granting a permanent mandatory injunction because the injunction was unconstitutional and did not have evidentiary support. Point three will not be addressed because the City had an adequate remedy at law that it failed to utilize and, therefore, the trial court erred in granting injunctive relief.

### IV. Public Nuisance

In its fourth and fifth points on appeal, NYKBA claims that the trial court erred in finding that the Building was a public nuisance. NYKBA first claims that this finding was in error because the trial court based its finding on Code violations and a 1997 declaration by the City that the Building was dangerous. NYKBA contends that this was not a proper basis for finding that the Building was a public nuisance. The next contention of NYKBA is that a dangerous building does not necessarily equate with a public nuisance. NYKBA's final claim is that the trial court's finding that the Building was a public nuisance was in error because it was not supported by substantial evidence and is against the weight of the evidence because, at the time of trial, neither the Building's interior or exterior affected the health, welfare, safety or morals of the public.

■ In Missouri, it is well established that a public nuisance is any unreasonable interference with rights common to the public such as the public health, safety, peace, morals or convenience. *State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 114 (Mo.App. W.D.1984). A public nuisance "annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community." *State ex rel. Collet v. Errington*, 317 S.W.2d 326, 331 (Mo. banc 1958). In determining whether a public nuisance exists, the court must consider whether the alleged nuisance is located in a public place, a place where the public is likely to congregate, a place where the public has a right to go, or a place where the public is likely to come into contact with the nuisance. *State by Major ex rel. Hopkins v. Excelsior Powder Mfg. Co.*, 259 Mo. 254, 169 S.W. 267, 273 (1914). A nuisance is public when it affects rights to which every citizen is entitled such as traveling on a public street. *City of St. Louis v. Varahi, Inc.*, 39 S.W.3d 531, 535 (Mo.App. E.D. 2001).

■ This case involves the public health and safety prong of public nuisance.

Specifically, whether the Building owned by NYKBA is a threat to the public health and safety, thereby constituting a public nuisance. NYKBA contends that the trial court erred in basing its finding on a 1997 dangerous building declaration. It argues that any findings made by the trial court should have been made on the basis of the Building's condition as of the date of the trial. The record reflects that the trial court limited the evidence and testimony regarding the status of the building to the date of the trial. At trial, during a conversation with counsel for both parties, the Court stated:

THE COURT: Okay. Then why don't we restrict the case to the status of the building today as we sit here and talk about it because it is already—I think all of us are aware that four years ago it was in bad shape. So what shape is it in today?

\* \* \* \* \* \*

Then let's deal with the condition of the building now or at least back to March 2[, 2001] which isn't that long ago to the last time somebody was in there.

NYKBA claims that the trial court erred in finding that the Building was a public nuisance because as of March 2001 the Building was no longer a dangerous building. The City responds that the Building is in the same state today as it was in 1997 when it declared the Building a dangerous building and ordered NYKBA to demolish it. In support of its claim that the Building is no longer a dangerous building, NYKBA relies on a letter dated March 15, 2001, that the City faxed to the attorney of the prior developer of the Building offering to dismiss the nuisance action if an itemized list of repairs were made to the Building. The evidence presented at trial showed that approximately $46,979 was spent by the prior developer to complete several of the requested repairs. The City

counters that although the repairs were made, they were not maintained. A witness also testified that NYKBA had hired a contractor named Secure Plus, Inc. to perform routine maintenance on the Building. Invoices dated May 13, 2001, and June 1, 2001, were submitted as evidence that NYKBA is maintaining the exterior of the building through the services of Secure Plus, Inc.

To further support its contention that the trial court based its judgment on the City's 1997 dangerous building declaration, NYKBA relies on paragraph two of the judgment's conclusions of law, which states:

The Order to Demolish and Declaration of a Dangerous Building and determination of a nuisance was issued July 29, 1997. The Order was not appealed to the Property Maintenance Appeals Board and therefore the Order remains today. Pursuant to RSMo Section 67.400 (2000 Supp.), a building declared a dangerous building pursuant to this statute is a public nuisance.

NYKBA claims that the following statement incorrectly states a conclusion of law: "Pursuant to RSMo Section 67.400 (2000 Supp.), a building declared a dangerous building pursuant to this statute [section 67.400] is a public nuisance." In determining whether the trial court erroneously stated the law, we must examine section 67.400, RSMo 2000, which provides:

The governing body of any city, town, village, or county of the first classification and any county of the first class with a charter form of government may enact orders or ordinances to provide for vacation and the mandatory demolition of buildings and structures or mandatory repair and maintenance of buildings or structures within the corporate limits of the city, town, village or county which are detrimental to the health,

safety or welfare of the residents and declared to be a public nuisance.

In effect, section 67.400, RSMo 2000, is an enabling statute. It enables a municipality to enact ordinances or orders requiring demolition and repair of buildings that adversely affect the health, safety or welfare of the residents and that have been declared a public nuisance.

Pursuant to section 67.400, RSMo 2000, the City enacted Article 5 of the Property Maintenance Code. Section 56–531 of the Code defines the purpose of the article as the implementation of section 67.400, RSMo 2000. Under section 56–532(b) of the Code, a building that is found to be a dangerous building is automatically declared a public nuisance. Although the Code provides that a building that is designated a dangerous building is automatically declared a public nuisance, section 67.400, RSMo 2000 does not contain the same provision. To the extent that the trial court's finding that the Building was a public nuisance was based on section 67.400, RSMo 2000, it is error. Correspondingly, that portion of the trial court's judgment is void and should be revised to comply with this opinion.

■ NYKBA's second argument is that a Code violation is not a sufficient basis for finding that a building is a public nuisance unless the violation affects the health, welfare, safety or morals of the public. It claims that the Building's Code violations do not affect the health, welfare, safety or morals of the public because the Building is locked and, therefore, inaccessible to the public. The City responds that the Code was enacted with the purpose of protecting the health, safety and welfare of the public. As such, the City contends that a Code violation is sufficient to sustain the court's finding that the Building was a public nuisance. In effect, the City argues that a Code violation is the equivalent of a public nuisance.

At issue is whether the Building's Code violations affect the health or safety of the public. The Building was cited for violating several provisions of the Code. Namely, the property maintenance provisions regarding (1) broken, open or unboarded windows; (2) standing water within the Building; and (3) harboring pigeons and vagrants. NYKBA claims that these violations do not affect the public's health and safety because the Building is inaccessible to the public. The record reflects that the City's last inspection of the Building occurred on October 8, 2001. At that time, Susan Crider, Code Enforcement Supervisor for Dangerous Buildings, City of Kansas City, Missouri, inspected the exterior of the Building. Ms. Crider testified that she did not smell any foul odors emanating from the Building; that she observed no evidence of falling bricks, windows or debris on the sidewalk in front of the Building; and that the Building appeared locked and secure. When asked whether she had witnessed any signs of pigeons or vagrants living in the Building, she testified that she did not see any such evidence. As to the pigeons' excrement on the sidewalk, Ms. Crider testified that it was not as bad as it had been in the past.

■ The Building is not a public nuisance because it does not affect the public's health or safety. As to the interior of the Building, Ms. Crider's testimony supported NYKBA's contention that the Building was secure and inaccessible to the public. The public does not, moreover, have a legal right to enter the Building as it is NYKBA's private property. The public's legal exclusion from the Building does not mean, however, that members of the public will not trespass. The issue is whether the interior of the Building can be characterized as a public nuisance when it

poses a threat to the health and safety of trespassers.

In Missouri, the duty of care owed to one entering the land of another is determined by the relationship between the property owner and the entrant. *Cochran v. Burger King Corp.*, 937 S.W.2d 358, 361 (Mo.App. W.D.1996). Entrants are characterized as trespassers, licensees, or invitees. *Seward v. Terminal R.R. Ass'n of St. Louis*, 854 S.W.2d 426, 428 (Mo. banc 1993). A trespasser is defined as:

> [O]ne who enters onto the property of another without a privilege to do so created by the possessor's consent or otherwise. Thus, an adult who enters onto the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure or curiosity is a trespasser.

*McVicar v. W.R. Arthur & Co.*, 312 S.W.2d 805, 812 (Mo.1958). As a rule, the property owner owes no duty of care to trespassers and is not liable for harm caused to a trespasser for failure to place the property in a reasonably safe condition. *Herman v. Andrews*, 50 S.W.3d 836, 840 (Mo.App. E.D.2001). "Trespassers take the premises, for better or for worse, as they find them, assuming the risk of injury from their condition 'the owner being liable only for hidden dangers intentionally placed to injure them or for any willful, illegal force used against them.'" *Politte v. Union Elec. Co.*, 899 S.W.2d 590, 592 (Mo.App. E.D.1995) (citing *Wyatt v. Kansas City Terminal Ry. Co.*, 229 Mo.App. 179, 74 S.W.2d 51 (1934)). This rule applies irrespective of whether the trespasser is known or unknown. *Id.*

Exceptions to the general rule have developed when facts exist that indicate that injury to trespassers should be reasonably anticipated by the property owner. *Seward*, 854 S.W.2d at 428. One exception occurs when the trespasser's presence on the property becomes known. *Id.* Under this exception, the property owner owes a reasonable duty of care to the trespasser. *Id.* at 429. This exception does not apply in this case because NYKBA is unlikely to be aware of a trespasser's presence in the Building. Restatement (Second) of Torts § 335 (1965) provides another exception:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers *constantly intrude* upon a limited area of land is subject to liability for bodily harm caused to them by an artificial condition on the land, if
> (a) the condition
>> (i) is one which the possessor has created or maintains and
>> (ii) is, to his knowledge, likely, to cause death or serious bodily harm to such trespassers and
>> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and risk involved.

*Id.* (emphasis added). This exception is inapplicable to this case. The exception requires that NYKBA knew or should have known of constant intrusion into the Building. As set forth below in point six of this opinion, the most recent evidence of intrusion was the breaking and entering by Mr. Sean O'Byrne, witness for the City, and Mr. Ben Knight, representative for the Building developer. Prior to their entry, the only evidence of intrusion was random entries by vagrants. None of

these intrusions were known to NYKBA until after they had occurred. Furthermore, there is no evidence to support the contention that constant intrusions had occurred. Evidence of random incidents of trespassing into the Building are insufficient to satisfy this prong of the exception.

Similarly, the exterior of the Building does not pose a threat to the public. Ms. Crider testified that the majority of the windows were boarded up and that she did not observe any evidence of falling brick or glass on the sidewalk in front of the Building. The evidence presented does not support a finding that the external facade constitutes a danger to the public.

Because the Building does not affect the health or safety of the public, it cannot be characterized as a public nuisance. The City's argument that a Code violation constitutes a public nuisance is unavailing. Whether the Building is an eyesore and an aesthetic irritant is not determinative. Being an eyesore is not sufficient to declare the Building a public nuisance.

NYKBA's final contention is that the trial court's finding that the Building was a public nuisance is in error because it is not supported by substantial evidence and is against the weight of the evidence. In support of this contention, NYKBA first asserts that the City failed to present sufficient evidence to support a claim that either the Building's interior or exterior constitute a public nuisance. As to the interior of the Building, NYKBA claims that it is inaccessible to the public and that the public does not have a legal right to enter or congregate around the Building. With respect to the exterior of the Building, NYKBA contends that the City failed to provide any evidence regarding the current condition of the Building's exterior. NYKBA's final assertion is that the City delineated the conditions constituting a public nuisance by faxing a settlement letter to the attorney for the prior developer of the Building and that by delineating such conditions the City admitted that the Building was no longer a nuisance once those conditions were improved.

Substantial evidence denotes competent evidence that, if believed, would have a probative force upon the issues. *State ex rel. Mobile Home Estates, Inc. v. Pub. Serv. Comm'n of Mo.*, 921 S.W.2d 5, 9 (Mo.App. W.D.1996). Competent evidence is defined by Missouri courts as relevant and admissible evidence that can establish the fact at issue. *Consolidated Sch. Dist. No. 2 v. King*, 786 S.W.2d 217, 219 (Mo. App. W.D.1990). A court should set aside a judgment on the ground that it is against the weight of the evidence with caution and only if it firmly believes that the judgment is wrong. *Schottel–Lehde v. Schottel*, 75 S.W.3d 359, 363 (Mo.App. W.D. 2002). The term "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. *Waddell v. Director of Revenue*, 856 S.W.2d 94, 95 (Mo.App. S.D.1993). The weight of evidence is not resolved by mathematics, but on its effect in evoking belief. *Wildflower Community Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo.App. W.D.2000). "We defer to the trial court as the finder of fact in our determination as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence." *Venture Stores, Inc. v. Pacific Beach Co.*, 980 S.W.2d 176, 180 (Mo.App. W.D.1998).

In this case, competent and substantial evidence was not presented to support the trial court's finding that the Building is a public nuisance. As discussed above, NYKBA's assertion that the Building is inaccessible to the public was supported by the record. Furthermore, NYKBA properly asserts that the public does not have a legal right to enter or congregate near the

Building. Although the record established that the public comes within the Building's sphere of influence on a daily basis by walking on the sidewalk in front of the Building, it also established that no evidence of falling brick or glass on the sidewalk was presented. In addition, no phone calls or complaints regarding the Building have been received by city authorities since the filing of the City's petition.

 NYKBA also argues that the City's acceptance of the completion of the repairs outlined in the settlement letter is the equivalent of the City admitting that the Building is no longer a public nuisance. This argument is flawed for two reasons. First, as the City points out in its response, not all of the conditions of the settlement letter were satisfied. Specifically, NYKBA failed to: (1) provide the City with a maintenance plan; (2) provide the City with a contact list for maintenance purposes; (3) utilize the $47,301 of PILOT money on maintenance; and (4) begin physically rehabilitating the building by December 31, 2001. Secondly, an offer of settlement is not an admission. "Public policy favors the settlement of disputed claims out of court and offers of settlement are treated as offers to obtain peace rather than an admission ... to be held against the offer[o]r." *State ex rel. State Highway Comm'n v. Sheets*, 483 S.W.2d 783, 785 (Mo.App.1972). The City is not, moreover, bound by the offer of settlement unless the other party to the action complies with it in its totality. As the prior developer of the Building did not completely comply with the settlement offer, the City is not bound by it. Because the City is not bound by the settlement offer, the Building's condition as outlined in the letter is not dispositive of whether the Building constitutes a public nuisance.

NYKBA has sustained its burden of proving that the Building is not a public nuisance. The trial court's judgment is not supported by substantial evidence and is against the weight of the evidence and must be reversed.

## V. Unclean Hands

 In its sixth point on appeal, NYKBA contends that the trial court erred in granting a permanent mandatory injunction to the City because the City came to court with unclean hands. Specifically, one of the City's witnesses, Sean O'Byrne ("Mr.O'Byrne"), testified that he broke and entered the Building. NYKBA claims that the City was aware of the fact that Mr. O'Byrne broke and entered into the Building. According to NYKBA, the purpose of Mr. O'Byrne's breaking and entering was to gather evidence to introduce at trial. NYKBA suggests that the City used Mr. O'Byrne's testimony to introduce manufactured evidence at trial.

 Generally, a court of equity will not assist a plaintiff who comes to court with unclean hands. *Mahaffy v. City of Woodson Terrace*, 609 S.W.2d 233, 238 (Mo.App.1980). A party who participates in inequitable activity regarding the very issue for which it seeks relief will be barred by its own misconduct from receiving relief. *Guzzardo v. City Group, Inc.*, 910 S.W.2d 314, 317 (Mo.App.1995). The inequitable activity does not need to be fraudulent in order for the party to be denied relief. *Moore v. Carter*, 356 Mo. 351, 201 S.W.2d 923, 929 (1947). Rather, a lack of good faith in bringing the suit is sufficient to deny the party equitable relief. *See id.* "What is material is not that the plaintiff's hands are dirty, but that [it] dirties them in acquiring the right [it] now asserts." *Karpierz v. Easley*, 68 S.W.3d 565, 572 (Mo.App. W.D.2002).

In making its argument that the City participated in manufacturing evidence, NYKBA relies on the fact that Mr. O'Byrne agreed to testify for the City prior to breaking and entering the Building. This argument overlooks the fact that the City did not know that Mr. O'Byrne intended to break into the Building until after it had occurred. Mr. O'Byrne testified that he and Ben Knight ("Mr.Knight") entered the Building by unlocking the windows with a power screwdriver and removing the boards from the windows. His testimony indicates that he believed that Mr. Knight represented the owner of the Building.

Q. You knew there was a legal way to enter the building, right?

A. No, I didn't.

Q. Why did you do that? At whose request did you do that, sir?

A. Actually, Mr. Knight had heard that I had Gabriel Communications, and he invited me to go through the building to show it as a mobile tele-communications—

Q. Did you have any conversations with anyone at the City Attorney's Office about breaking and entering the building?

A. No.

Q. Did you have any conversations with anyone from the City about breaking and entering into to the building?

A. Yes.

On the basis of his testimony, Mr. O'Byrne appears to have entered the Building with the intention of showing it to a possible tenant, Gabriel Communications. Although Mr. O'Byrne testified that he had conversations with the City regarding breaking and entering the Building, none of the evidence presented suggests that the City knew about the breaking and entering prior to its occurrence.

A related problem with NYKBA's point six is the absence of the manufactured evidence. NYKBA contends that the City manufactured evidence that it presented at trial. Yet when the City questioned Mr. O'Byrne on the witness stand, it did not elicit any information regarding the condition of the building at the time that he broke into it. Additionally, NYKBA's argument did not recite anywhere in its brief the type of evidence that the City manufactured. Whether Mr. O'Byrne committed a crime by breaking and entering the Building is not at issue in this case. Because the City was unaware of his intention to break into the Building, the City was not an accomplice to his conduct. Neither did NYKBA identify the manufactured evidence that it asserts the City introduced at trial. Point six is denied.

### Conclusion

The portion of the trial court's judgment granting a permanent mandatory injunction is error and is reversed. The City had an adequate remedy at law that it failed to pursue. The Code does not contain a provision allowing the City to bypass the administrative remedy process and seek an injunction. In the absence of such a provision, the City must pursue the administrative remedies provided in the Code before seeking injunctive relief. The judgment also grants the City the option of forcing a sale of the Building if NYKBA does not repair or demolish the Building. As the trial court's award of the injunction was in error, so too is the provision regarding the forced sale of the Building. Accordingly, the trial court is directed to revise that portion of its judgment to comply with this opinion. As discussed in Section IV of this opinion, the trial court also erred in concluding that the Building was a public nuisance. Neither the interior nor the exterior of the Building poses a

threat to the health or safety of the public. This case is reversed and remanded to the trial court with directions to amend its judgment to conform to this opinion. In all other respects, the appellant not having claimed error, the judgment is affirmed.

EDWIN H. SMITH and LISA WHITE HARDWICK, JJ. concur.